Good morning, Your Honors. My name is Brian Graff. I'm with the law firm Ryan Swanson in Cleveland. We represent the appellant in this case, BNSF Railway Company. And may it please the Court, I would like to reserve three minutes, if I can, for rebuttal. Your Honors, nowhere in the District Court's order on fees and costs in this case did it compare the amount of damages sought and determined by the jury versus the amount of damages received, which was $20,000. And $20,000 was the sole relief provided to the respondent in this case. Under this Court's precedent, particularly in McCown v. City of Fontana, such a comparison should have been the District Court's primary consideration in determining what fee award was reasonable. Instead, when the District Court concluded that it would not engage in any reduction of the lodestar amount on the basis of limited success, with one caveat that I'll talk about in a moment with respect to opposition on the summary judgment motion, the Court relied on authority. One case, Bala v. Port Authority Trans-Hudson Corp., in which attorney fee award was allowed to exceed compensatory damages. But that's not the proper comparison. That's not the proper analysis. You argue that Wallace achieved only a partial victory. But weren't all of her grievances part of the same claim that BNSF violated under the Federal Railroad Safety Act, and didn't she prevail on that claim? She prevailed on a Federal Railroad Safety Act claim, Your Honor, yes. However, it was not simply one claim that the respondent submitted. It was under one federal statute. All of her claims were under the Federal Railroad Safety Act. But Ms. Wallace, the respondent, made multiple claims. And in the record, you will even see in closing argument, counsel for respondent highlighted and articulated that she still had two claims remaining for the jury. It's also, I think, important to note that in response to the single claim theory urged by the respondent, that here under 20109, Ms. Wallace alleged both a violation of 20109 subpart A for retaliation based on her engagement in protected activity. She also made a claim under 20109 subpart C for alleged interference with medical treatment. Well, is it possible? Well, let's, I know that the judge focused on the motion, the summary judgment part of it. And now let's say, hypothetically, if she had, you won certain things on summary judgment, but she was allowed to go to trial on other things. If, hypothetically, if she'd gone to trial and lost, if it was a defense verdict, then she would have no claim. That's true, Your Honor. Right? True. So, but she did win something, $20,000. She lost on punitives, right? Yeah. And then she got $20,000. And so it wouldn't be your position that it was improper for the court to look at summary judgment, but it was improper not to look at everything? Is that your position? Or are you saying the judge can't look at summary judgment at all? No, I'm not, Your Honor. Absolutely, the judge can look at summary judgment. And I believe it is in McCown itself that the court said lack of success on summary judgment must figure into the calculation of fees. So I don't take issue with the fact that the judge did look at the opposition to summary judgment and reduce the amount spent by counsel 50 percent on that. However, what the court failed to do and what we submit as an abuse of discretion, Your Honor, is that it made no such articulation or allotment for her lack of success at trial. But let's say we send it back. If the court then looks at the $20,000, talks about the punitive damages, and maybe the court could articulate. I know it's your position that there was no public benefit. True. But there's more discussion of the public benefit and say the court says, well, I think that there was some sort of benefit because of da-da-da-da-da. I mean, arguably the court could get to the same place, right? I don't believe so, Your Honor. I mean, you're going to argue against that. Absolutely. Absolutely. But the nub of your defect is the court doesn't even talk about the trial. It's a little bit of both. It's certainly I think it's problematic that the court doesn't talk about the lack of success at trial. Absent the punitive damages failure at trial, and I think the court engages in a flawed analysis on the punitive damages piece, which I can talk about in a second. But at its core also, I think there is a requirement that the district court reduce the fee award to reflect a reasonable amount that would have been expended to achieve the results obtained. I think that's what McCown, McGinnis, and the Supreme Court precedent that they rely upon say. And here, when we look at the district court's Lodestar calculation, even when it reduces the amount spent opposing summary judgment, there are critical things that it completely fails to account for, completely fails. The damages that the respondent claimed were in no way diminished by the summary judgment order, not one piece. In fact, as the court knows from the briefing, her damages claims increased exponentially at trial and through closing argument. Well, she asked for what, $300,000? No. In closing argument, counsel made an argument for the equivalent of $1.45 million in emotional distress damages. There was also a measure of damages roughly north of $49,000 in back pay that were defeated on at the close of the plaintiff's case. So, no, she asked for significantly more than that amount. Let me see if I can take one thing off the table. Under Local Rule 54D, a clerk's taxation of costs is final unless it is appealed to the district court judge. You didn't lodge such an appeal. So why is your objection to the clerk's taxation of costs not waived? We rely on the case cited in our brief, but here's the nub of it. The court's award of taxation of costs in this case is, we submit, so related to challenging the district court's attorney fee award that it's inseparable. What we're not doing with respect to the taxation of costs, and this is, I think, a $20,000 issue, but what we're not doing with respect to the taxation of costs is challenging in any way any item that the district court or the clerk concluded was an appropriate taxable cost. Okay? All we're saying is, and the taxation of costs was issued by the district court subsequent to the court's order on fee and cost. That is challenged. And what our contention is and our objection to the order is, is the court in that order said, I'm not going to reduce for lack of success at trial either attorney's fees or costs. Expenses. Expenses. Thank you, Your Honor. There's a difference. There is a difference. There is a difference. Costs that were awarded by the clerk's office are taxable costs that they get on, the prevailing party gets automatically. You can quibble about the amounts because the clerk might go too far, but that's a separate item completely. 1988 allows for extra award of, quote, expenses slash costs that are not taxable by the clerk. The court has to do it. And that's what you're really complaining about. Not, as Judge Callahan said, when the clerk taxed costs, you should have appealed that to the district court,  but I'm concerned about the way you characterize the district court judge's order. You said he didn't take account of lack of success. His order says limited success. What you're quibbling about is that he doesn't write the words, whatever, you sought $300,000, you only got $20,000. It's not that he just ---- He knew, this is, you know, you're dealing with Judge Zeeley. Understood, Your Honor. He's a very experienced ---- I have nothing but amazing respect for Judge Zeeley. He has tremendous trial experience. Absolutely, Your Honor. He's done these cases for a number of years. I agree, Your Honor. He knows how to award attorney's fees. He knows the rules and the dynamics of an attorney fee request. Understood, Your Honor. And our case law, you know, we have imposed such a burden on the district courts on these attorney's fees, they have to go through the records. You know, just like he did here. He went through the hourly request. He looked at their hourly rate. He cut out duplicate hours. He did his own billing judgment. He looked at the nature of the claim. And as Judge Callahan said, this ---- there may have been two separate claims, one for interference and one for retaliation. The retaliation was based on a number of different theories. Sure. She prevailed on that claim, which seems to have been the core claim that she was retaliated against. And he says he took account of the limited success. And in his judgment, complain about it if you want, his judgment was such that the award that he gave, and you may think it's too high and maybe we all think it's too high, but he was exercising his discretion based upon a record that he saw. How long was the trial here? Eight days, Your Honor. The problem, respectfully, Your Honor, is that what ---- and again, I have nothing but the utmost respect for Judge Gilley, and he is exceedingly experienced. We will not quarrel with that. However, the damages that ---- or the reduction that was made for time spent opposing summary judgment didn't address at all the delta between what was asked for and what was obtained. It didn't address the fact that punitive damages failed. It didn't address at all that her claim of, you know, back pay that we did not allow her to return to work on time failed. Was there ---- did he bifurcate punitive damages? He ---- yes, Your Honor, to some degree, in terms of the amount to be awarded for punitive damages if the issue arose, if there was a finding of maliciousness, there was a bifurcation. So maliciousness was on the table when the jury went back to deliberate. That is absolutely true, Your Honor. Right. So was there any other like a deposition or an expert that was just devoted to punitive damages? There were experts that certainly ---- yes, there were two experts, George Gavala and Nancy Lessen, that ---- who were both each deposed and who aspects of their testimony, you know, were related to punitive damages theories, among other things. Also in, you know, for instance, the, you know, failed allegation of medical interference, there was, you know, depositions of hospital staff with respect to those issues. So there were trial costs, pre-trial costs that were incurred and shouldn't have been. Could you realistically segregate out the time that was expended? Well, to some degree, yes, you certainly could. And you see that even in the district court's order when he rejects the BNSF's argument that the fee should have been reduced based on a punitive damages award. We highlighted them in our briefing, and Judge Zille acknowledged that there was, I think, 55 hours, he said, you know, that were spent on punitive damages that he did segregate out and said, I'm not going to deduct any further. And he says that because he says two things. One, he says punitive damages weren't in and of itself a separate claim. That's right. But punitive damages also weren't in and of themselves a separate claim in McGinnis. And the Ninth Circuit said that was an abuse of discretion not to consider that and take that into account. And then secondly, he says, well, there was enough on punitive damages to go to jury. It created an issue of fact. But just simply creating an issue of fact does not make a claim successful, of course. And under this court's precedent, U.S. Supreme Court precedent, it's clear that it is lack of success that matters. All right. You want to save some time? Yeah, I'll save some time. Thank you very much, Your Honor. Good morning, and may it please the Court, Christopher Bowman, on behalf of Plaintiff Appellee Jeanette Wallace in this matter. I want to begin very briefly with something that Counsel for Appellant mentioned at the end, where he attempted to compare this case to McGinnis, but he led it off by saying that Judge Zille considered the punitive damages award. This is different or, excuse me, that makes this case distinguishable from McGinnis, where this court found that the district court had abused its discretion by refusing to make any such relation. The Railroad's argument here is not that Judge Zille or, excuse me, that the district court did not make or refused to consider its argument. Its argument really – Judge Zille, though, seems to focus on the summary judgment, which is kind of unusual because when you – I mean, obviously, even though you prevailed on some things as summary judgment, if you'd lost a trial, that would have been the end of it, right? Correct. So it's really what – that's just kind of along the path. And, yes, he can talk about it, but he doesn't talk a lot about really what happened at trial. And I can't find that he – I think you even argue that the attorney – even if the attorney's fee award should be reduced based on Wallace's lack of success, the award is justified because the result confers a public benefit. That's one of the things you argue. Yes, ma'am. But I can't find a finding by the district court on that, that it did confer a public benefit. So it would seem to me if, you know, if we were to find that the judge really – it's hard to believe in certain ways that the judge, if you sit through a trial, that you don't know that a trial happened and what, you know, and that you're not thinking about that. But he doesn't really articulate too much on, okay, well, she only got $20,000 and she was asking for 1 point whatever million and she didn't get punitive damages and doesn't talk about what – if there isn't any finding on public benefit. There's not a finding by the district court on public benefit. Again, it's our position that an explicit finding on public benefit would not have been necessary here. I know, but if we – but we can't make that here. That wouldn't be something we could do. I understand. If the court is – believes that a public benefit finding would be necessary, and again, it's our position that it would not be necessary in this case for the reasons explained in our brief, a remand would be the appropriate result in that circumstance, not a reversal, not a reduction of the district court's order. Do you really think he grappled with the amount sought? With the amount? In light of the amount recovered? I believe that it was considered. But in his head, he didn't really say a whole lot in the record. There are not explicit findings. There's not, as Appellant's counsel has articulated, you know, references to the closing argument. This court and courts around the country have also said that a plaintiff and plaintiff's counsel should not be faulted by seeking, you know, including additional claims, by asking a jury to award a certain amount, and that it can't simply be a mathematical formula saying, well, when you look at what was requested in closing argument versus what the jury awarded. That's right. I mean, that's absolutely right, and I think one of the things through this trial took eight days. Eight days. Eight days. The jury deliberated for approximately 20 hours. Eight days. I haven't made reductions based on any breaks they took on lunch. I'm just going by the district court docket. Not to mention all the pretrial and depositions. Yes, Your Honor. This was a very extensive case. It was very hard. Hardly fought. Hardly fought by both sides. I think that Judge, you know, it seems to be what Judge Zille was factoring in as well to his overall calculus. Exactly, and this court, and again, courts around the country have held that, you know, this is the reason why these things are vested with district court discretion. I will be the first to admit that if Judge Zille had reduced the fee award a second time, based on limited success or partial success, and I was here as the appellant, I would have a very difficult argument. I'm not saying that I would necessarily lose the argument, but it would be very difficult. These things are vested with the district court because the district court, with all respect to the panel, is more familiar with the issues. Well, what if the district court had said specifically, I am just not going to consider the fact that you didn't get punitive damages when I am evaluating your overall success? That would be legal error, would it not? That would be inconsistent with McGinnis, but, again, that's not what happened here. He just didn't mention it. He did address the fact that argument for punitive damages was not successful. The district court declined to make a second reduction or arguably even a third reduction based on that finding, but the district court did articulate in its order that the punitive damages claim was not successful, and it discusses that it attributed 55 hours to the punitive damages claim but was declining to accept the railroad's argument to reduce the fees for those hours spent, saying that they were still reasonable, even though the jury disagreed with our position that this case did warrant punitive damages. Well, if you lose on something, if you lose on punitive damages, can the court then just say, well, I'm not going to factor that in? Because he considered and said I'm not going to give you a 50, there's not going to be a 55-hour reduction even though you lost on that. Is that wrong? Is that legal error? No, Your Honor. I don't believe it is. Well, how do you pull that out of your hat? Because I believe that there's a difference between saying I'm not going to consider this versus I'm going to consider the railroad. It would be one thing if Judge Zille had said, you know, BNSF has made this argument. I'm not going to consider it. What happened here is he said BNSF has made that argument. I have considered it and I am rejecting it. That's the distinguishing factor between this case and the hypothetical that your question poses. So he didn't flat out say that even though you lost on punitive damages and there's 55 hours that were put in for punitive damages, I'm still not going to reduce it by 55 hours. He didn't say that? What did he say? He said he talked about punitive damages. There's the mention of 55 hours. He said although plaintiff was ultimately unsuccessful on the issue of punitive damages, it was not a separate or distinct claim, and the court finds that there was sufficient evidence to go to the jury on the issue. Yes. So he refuses to, or he says he'll include those 55 hours. Now, is that the proper standard, sufficient evidence to go to the jury? What's that drawn from? I believe it's drawn from the overarching, excuse me, the overarching standard under Hensley and Purdue and other cases that have applied or addressed attorney fee resolution. Were these hours reasonable? But if you would concede, if you had lost on everything, then even though it was reasonable for your case to go to the jury and you don't get any money then, do you? You have to win something. You've got to win a, you've got to have a read to hold on to, don't you? Yes. But we would not have, it wouldn't have been denied because the hours weren't reasonable. It would have been denied because the condition precedent before the court reaches that determination, before the court is supposed to engage in its Lodestar analysis, that the district court never would have had the ability to get to Lodestar because the first element is you have to show entitlement to some fee. The punitive, at trial, the punitive damages claim was just part of the presentation, right? Correct. And Judge, I apologize, I'm going to mispronounce your name. That's okay. Judge Pius, to your question about, I believe it was you, how do you extract these, how do you engage in these, it's very difficult. I used to find that very frustrating when I was a district judge. Exactly. And there is, in some circumstances it can be easily attributable to one thing or another. That was not the fact here in this case. The standard in this case was did everything that the railroad did, which the jury found violated federal law, did that rise to a certain level that entitled it to punitive damages? This was not a situation where there was a specific witness or a specific expert that solely discussed. That's not often, I mean, that's not unusual. Usually you have the behavior which you put in on the basic liability and then you argue from those facts that this was so outrageous it rises to the level of malice, malicious behavior. But it's, and our law still nonetheless says, okay, you have to distinguish between the two in the sense that you did seek punitive damages and therefore, you know, the district court needs to take into account that fact. Now, arguably he did. I mean, he said what I read, but he said it was sufficient evidence to go to the jury. And that's why I asked you, where does that come from? I don't know if the, and again, it would fall under the same umbrella. The district court exercised its discretion to determine what was reasonable. In light of the case as a whole. In other words, it wasn't a frivolous claim. Exactly. And appellant would have this panel overrule the district court's discretion and say we're going to look solely at the dollar amount, which. Well, that would be one option. And the other option, which you adverted to, was we need to remand to the district court to do a better explanation of why he came to these conclusions, why he focused on summary judgment, why he did what he did on putatives, why perhaps there was some public benefit that he didn't address. And I should clarify again, we are not here requesting that this court affirm and remand. We are requesting a pure affirmance. Oh, I understand. I just want to make sure. By all those, you are also not here to advocate for flat-out reversal and granting of discharge, you know, wiping out the fees. Yes, Your Honor. I want to address very briefly, in addition, the public policy behind these cases, which this court has routinely recognized in its decisions. I believe most recently and perhaps most articulately in the concurrence in the Bravo case, which the railroad cited in its 28-J letter, that if these fees are going to be tied, if attorney's fees under the FRSA are going to be tied to the dollar amount awarded and that consideration is going to control everything, it would be very difficult for individual plaintiffs to mount a defense. Judge Pius, as you addressed, this case has been heavily litigated. This case is now more than eight years old. This case stems from an incident that happened in November of 2008. We're here now in February of 2017 to hopefully finally put this case, wrap this case up and allow both the court and the firms to close their files on it. Very briefly, Judge Callahan, you addressed the taxation of costs and the impact of Local Rule 54. As we explained in our brief, the railroad had every ability here to ask the district court to review that. It failed to do so. The case that it cited to the district court is completely a complete non sequitur, where in that case the then-appellant had challenged the clerk's taxation to the district court, and this court explicitly held in Walker v. California a party's failure to challenge a clerk's taxation is dispositive of whether or not that party had waived the right to appeal it, but BN has not done that here, and its appeal on that issue is waived. I see my time has expired. Unless the panel has any questions, we'd ask the court to affirm that the district court did not abuse its discretion in setting the fee award. Thank you. Thank you. Get some time for rebuttal. Yes, Your Honor. I believe hopefully four quick points. Thank you, Your Honor. Counsel has made the argument that litigants should not be faulted for asking for a certain amount or pursuing certain claims. Respectfully, I think the appellant has a different perspective on it, and I don't believe that we want to encourage litigants and parties to overvalue their cases. It does create the need for or the requirement of additional time and expense that a defendant has to defend. Overreaching encourages all the wrong behaviors. It leads to cases that last on an eight-day jury trial for a claim that was worth $20,000. What would you have us do if we were to remand the case to the district court to address the issues that you've raised here? Do you want us to just reverse his fee award and do our own calculations, or do you want us to send it back so he can check the boxes that you think he failed to do? Your Honor, I certainly do not expect that Judge Zille would simply check boxes, and I would hope that would not be the case. I don't mean that in a pro forma sense. There are certain issues you've raised. I believe a remand is appropriate for a determination of what is an appropriate reduction for lack of success at trial. McCown teaches us that lack of success on summary judgment. Do you want us to rule that it has to be reduced, given the lack of success? Yes, I believe that an instruction that lack of success at trial must be taken into account should be the instruction. Now, whether it could be should be taken into account would probably suffice as well, but I believe it should be with instruction that lack of success at trial must be taken into account. Again, McCown teaches us that lack of success on summary judgment is taken into account, so why shouldn't lack of success at trial be similarly taken into account? This is a case in which, you know, the respondent only obtained 1% of what she asked for, 1%, and to make no reduction based on lack of success at trial under those circumstances we believe to be an abuse of discretion.  Thank you very much, Your Honor. Thank you, counsel. As I said earlier, we're going to take a short 10-minute recess before we hear Cole.
judges: Fisher, Paez, Callahan